## Chicago, P. & Q. R. R. Co. v. Rachel Thorson.

1. ORDINARY CARE—*At Railroad Crossings.*—A person has no right to blindly run into danger and then seek to recover damages for the resulting injury from another; and a person will not ordinarily be permitted to recover damages from a railroad company for injuries received at a crossing, where the view of the railroad tracks was unobstructed for a considerable distance and such person went in front of a train without looking, or listening, or ascertaining by any means, whether it was safe to go upon the crossing.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding. Heard in this court at the May term, 1896. Reversed. Opinion filed December 9, 1896.

SAMUEL RICHOLSON, attorney for appellant; O. F. PRICE, of counsel.

HENRY W. JOHNSON and TRAINOR & BROWNE, attorneys for appellee.

MR. JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

This was an action on the case brought by appellee against appellant to recover damages for personal injuries sustained by her, while attempting to cross appellant's railroad tracks at their intersections with Courtney street, in South Ottawa, in LaSalle county, on January 17, 1894.

On the first trial of the cause the jury disagreed, but upon the second trial appellee obtained a verdict for $5,000, and a motion for new trial being overruled there was judgment on the verdict.

The declaration originally contained five counts, but plaintiff dismissed as to the third and fourth counts, leaving only the first, second and fifth.

The first count alleges that while the plaintiff, with all due care and diligence, was walking across said railroad, the defendant, by its servants, so carelessly and improperly

drove and managed a certain locomotive engine and train, that it ran upon and struck the plaintiff, causing her injury, etc.

The second count charges that plaintiff, with all due care, was walking across the railroad, and defendant's servants neglected "to keep a bell of at least thirty pounds weight to be rung and kept ringing, or a steam whistle to be blown and kept blowing for the distance of eighty rods, until the crossing was reached by said locomotive engine and train of cars, contrary to the form of the statute," etc., and alleges that by reason of such default and neglect, the plaintiff was then and there struck and injured, etc.

The fifth count sets up an ordinance of the city of Ottawa limiting the speed of locomotives attached to passenger cars to ten miles per hour, and limiting the rate of speed of locomotives attached to any freight car to six miles per hour, and alleges that the locomotive which struck the plaintiff, with the freight cars attached thereto, was running at a greater rate of speed than six miles per hour, whereby the plaintiff was struck and injured, while she was in the exercise of due care and caution for her own safety, etc. To all of these counts the defendant pleaded not guilty.

The facts of the case seem to be substantially as follows: Appellee was a domestic servant in the family of one Graves, who lived in the northeast part of the city of Ottawa. Mrs. Wilhelm, a sister of appellee, lived at the extreme southwest limit of South Ottawa, south of the Illinois river, and about 600 feet west of appellant's railroad on Courtney street. Appellee had been in the habit of visiting her sister once or twice a week for about a year before the accident happened, and, in doing so, necessarily crossed appellant's railroad on Courtney street, and thus became familiar with the crossing and its surroundings.

North Ottawa and South Ottawa are connected by a wagon and foot bridge across the Illinois river, and appellant's railroad also crosses the river upon a bridge some distance below the wagon bridge.

On the day of her injury, appellee rode with her employer,

Graves, as far as the north end of the wagon bridge and thence proceeded on foot to visit her sister, approaching the railroad crossing on Courtney street from the east. At the same time a way freight, carrying passengers, was approaching the same crossing from the north. There was quite a strong wind blowing at the time from the south, and toward the direction from which the train was coming. Appellee was either walking rapidly or running toward the crossing, which she reached at the same moment as the locomotive, and, stepping upon the track, the engine struck her and carried her upon the pilot across the street, where she rolled off the pilot upon the station platform, and in some way one of her feet was crushed and mangled in such a manner that amputation became necessary, whereby she lost two-thirds of the injured foot, causing a permanent and serious injury. She also received other hurts and bruises but not of a permanent nature.

At the close of plaintiff's evidence, a motion was made by appellant to exclude the evidence and direct a verdict for the defendant, but the court overruled the motion and defendant excepted. At the close of all the evidence the motion was renewed, but was again overruled, and this action of the court is assigned as error.

Various other errors are assigned by appellant, but the principal point relied upon for a reversal is that the evidence shows appellee's injury was the result of her own negligence, and that she has failed to prove that she was in the exercise of ordinary care for her own safety at the time of the accident.

It is insisted by counsel for appellant that there was no issue before the jury as to whether or not the statutory signals were given and that it was therefore erroneous to submit that question to them by instructions. While the second count of the declaration may be open to some criticism as to its construction, there can be no reasonable doubt as to its meaning, and it can not be fairly understood otherwise than as charging that a bell of the weight required by the statute was not kept ringing upon the engine until the

crossing was reached, so as to comply with the statutory requirements.   We think there was no error on the part of the court in submitting that issue to the jury.

Nor do we think there was any error in admitting in evidence the ordinance of the city of Ottawa, limiting the speed of trains within the corporate limits.   It seems to have been found in a book of ordinances published by the authority of the city, and which are by the statute made competent evidence.   Rev. Stat. Ill., Chap. 28, Sec. 66.

There is a conflict in the evidence upon the question as to whether the bell was rung or not, as the engine approached the crossing—that on the part of appellee being entirely of a negative character, while witnesses for appellant, particularly the engineer and fireman, swear positively to the affirmative fact that the bell was an automatic ringer; that it was set in motion before the train left North Ottawa, and continued ringing until after the engine stopped subsequent to appellee's injury.   The conductor and brakeman corroborate the engineer and fireman upon the point that the bell was ringing when they left Ottawa, but whether it was kept ringing until the crossing at Courtney street was reached they can not say.   Mrs. Knash swears she heard the bell as the engine was approaching the crossing.   Mr. Bute, a passenger, testifies to hearing the bell ringing before the train started across the bridge from North Ottawa.   We think a clear preponderance of the evidence shows that the whistle was sounded about the time the train emerged from the bridge, which was something like 600 feet north of the crossing.   We can not say, however, that a preponderance of the evidence shows that the bell was not rung and kept ringing, as required by the statute. But were this the only question in the case, we would not feel disposed to interfere with the finding of the jury, as they have unquestionably better opportunities of judging as to the credibility of the witnesses than we have, and due respect should be paid to their judgment in that regard.

As to the speed of the train, we think the evidence shows that it was going at a rate exceeding six miles per hour,

which, it being an engine attached to freight cars, was beyond the limit fixed by the ordinance. The evidence does not show, however, that it was going at a high and dangerous rate of speed, none of the witnesses swearing that it was going faster than ten or twelve miles per hour. It is not like the case of C., C., C. & St. L. Ry. Co. v. Baddely, Adm'r, 150 Ill. 328, cited by counsel for appellee, where the evidence showed that the train was going at the rate of fifty miles an hour, which was a high and dangerous rate of speed within the corporate limits of a populous town or city, regardless of any ordinance limiting the rate of speed. In the case at bar, we think a fair average of the evidence does not show that the train was moving at a greater rate of speed than about eight or nine miles per hour, which, aside from the ordinance, can not be regarded as a high or dangerous rate of speed, taking into consideration the location and surrounding circumstances at the time of the injury to the appellee.

It is insisted by counsel for appellant that inasmuch as the train which did the damage carried passengers, it must be regarded as a passenger train, and had a right under the ordinance to run at the rate of ten miles per hour, but we think that notwithstanding the fact that the train carried passengers it was still a freight train within the meaning of the ordinance, which by its terms prohibited any locomotive engine attached to freight cars from running faster than six miles per hour within the corporate limits of the city.

As a question of fact, therefore, we think the evidence shows that the train was running at a greater rate of speed than was permitted by the ordinance. But the question remains, whether or not appellee was in the exercise of ordinary care for her own safety at the time of the accident. If she was not, then, whatever may have been the negligence of appellant's servants in charge of the engine and train (short of such gross negligence as would amount to almost wilful and deliberate injury,) she can not recover. The burden of proving due care on her part was upon appellee. We think this allegation of the declaration is not supported

by the evidence, but on the contrary, it shows such an entire disregard for her own safety as to preclude any right of recovery. More than a dozen witnesses, having no better opportunity for observation than the appellee, testified that they saw or heard the train approaching. No reason is perceived why she should not have seen or heard the train as well as the others. It is argued by counsel for appellee, that she was young and inexperienced. But she was not a child of tender years; she was a young woman between sixteen and seventeen years old, apparently possessing ordinary intelligence and all her natural faculties. It is true the wind was blowing, and she was engaged in holding on her hat and trying to prevent the wind from disarranging her clothing, but her view of the track upon which the train was approaching was entirely unobstructed for a distance amply sufficient to enable her to see the oncoming train had she used the slightest care to discover it. She must have known that a railroad crossing is a dangerous place, as that is a matter of common knowledge with which we think she was properly chargeable. But according to her own statement, she hurriedly went upon the crossing in question, looking neither to the right nor the left, but straight ahead, simply paying no heed at all to anything except the fact that she wanted to get over the track as quickly as possible. Had she looked up but for one instant, she could not have failed to see the train, which was then close upon her, and the injury would have been avoided. She had no right to shut her eyes and blindly run into danger, and still claim to be in the exercise of due care for her own safety. While it is not proper to instruct juries as to what will constitute negligence in approaching railroad crossings of streets and highways, it nevertheless remains true, that no ordinarily prudent and careful person will attempt to cross a railroad track without looking, or listening, or ascertaining by some means whether it is safe to cross. Recoveries have been permitted in some cases where the injured party did not appear to have looked and listened for the approaching train, but they have generally been where some circumstances

of excuse took the case out of the operation of the general rule. In this case we see nothing in the evidence to prevent the appellee from discovering the train in ample time to avoid injury had she exercised the slightest care for her own safety, which we think she did not do. Several witnesses testify to statements alleged to have been made by appellee after her injury, tending to show that she saw the train approaching, but being in a hurry, thought she could beat it over the crossing, and in attempting to do so got caught and injured.

The witness Bute, who was a passenger on the train and helped to carry appellee to her sister's house after the accident, testifies that the sister, Mrs. Wilhelm, asked appellee what made her do it, and her reply was, "Because I was in a hurry, and it was all my fault."

Dr. Weiss, the surgeon who treated her after the injury, swears that appellee told him she saw the train coming and ran to beat it across. A number of other witnesses testify to similar statements, and while they are contradicted to some extent by appellee and her sister, we think the preponderance of the evidence shows that appellee did make such statements, and they would appear to be consistent with what seem to be the facts of the case. Without further extending the limits of this opinion, we feel constrained to hold that appellee was not in the exercise of ordinary care for her own safety, but was guilty of such negligence as precludes a right of recovery. Unfortunate as the injury is to her, we are of the opinion it was the result of her own want of care.

Our conclusion is, that the court erred in not sustaining appellant's motion to exclude the evidence and direct a verdict for appellant, and for that error the judgment must be reversed. Under this view of the case it is unnecessary to examine the other errors assigned. Judgment reversed.

FINDING OF FACTS TO BE MADE A PART OF THE JUDGMENT.

We find that appellee was injured through her own negligence and want of due care for her own safety, and not in consequence of any negligence on the part of appellant or its employes.