## Chicago & Alton Railway Company v. George T. Blake, Administrator.

### Gen. No. 4,592.

1. Contributory negligence—*when one attempting to cross railroad tracks guilty of.*. Held, from the evidence of this case, that the plaintiff's intestate, in attempting to cross railroad tracks, was, as a matter of law, guilty of contributory negligence.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of LaSalle County; the Hon. Richard S. Farrand, Judge, presiding. Heard in this court at the October term, 1905. Reversed, with finding of facts. Opinion filed March 10, 1906.

Lester H. Strawn, for appellant; Winston, Payne & Strawn, of counsel.

H. H. Dicus and Reeves & Boys, for appellee.

Mr. Justice Dibell delivered the opinion of the court. Bloomington street in the city of Streator runs north and south. Kent street crosses it at right angles. One hundred and eighty-nine feet north of Kent street a single track branch of the Chicago & Alton Railway crosses Bloomington street nearly at right angles, but varying slightly to the northeast and southwest. The railway track is straight for about 1100 feet west of that crossing, and the track can be seen west from the Bloomington street crossing for 1600 or 1700 feet. About 700 feet west of Bloomington street the railway passes under a viaduct at another street. The railway comes from the west to Bloomington street on an up grade through a depression. The rise from the viaduct to Bloomington street crossing is from 7½ to 8¾ feet; and that crossing is 4 feet and 9 inches below Kent street. South of the right of way and west of Bloomington street there are a number of sheds and outhouses, north of one of

them a barn, and on the south end of those lots, facing south on Kent street, are several houses.    The ground immediately west is somewhat higher than in Bloomington street.    A person going north from Kent street on Bloomington street finds that these buildings and rise in the ground and depression of the railroad track partially obstruct his view of a train approaching from the west till he comes within something like 100 feet of the track.    A camera stationed on Bloomington street 100 feet south of the crossing produced a photograph showing the shirt front of a man of ordinary height standing on the track 175 feet west of the crossing. Nearer the track a view much farther west can be had by a person in the street looking that way.    The top of the smoke stack of the engine hereinafter mentioned was 14 feet and the top of its cab 13 feet above the rail; and it is common knowledge that baggage and passenger cars are about the same height as the cab.    A train in this depression could be seen much further west than a man, because of its greater height.    George 'Cramey was going to his work at about 5 :15 p. m. of October 2, 1901.    He was riding a bicycle and going north on Bloomington street.    At the Chicago & Alton crossing on that street he came into collision with the engine of a regular east-bound passenger train, which was about 5 minutes behind time, and was going about 15 miles per hour, in violation of an ordinance limiting such speed to 10 miles per hour.    Cramey was thrown perhaps 30 feet; his skull was fractured and one leg broken; and he died in about three hours.    His administrator brought this action against the railway company to recover damages for the benefit of his next of kin, who are Syrians of Lebanon, in Asia Minor.    The declaration charged that defendant so carelessly drove and managed its engine and train, that said engine struck said bicycle; that a bell was not rung or whistle sounded as the train approached the crossing; that the train was run at a speed which violated an ordinance of the city; and that defendant had erected at said crossing a bell or gong and certain wires, so constructed that the bell would sound when an engine or car came within 1200 feet

of the crossing, and would continue to sound until the engine or car had passed over the crossing; that defendant negligently and in violation of its duty permitted said device to become out of repair, and that in consequence thereof it gave no warning of the approach of the train in question. Each count charged that by the cause in that count stated the engine struck the bicycle and caused Cramey's death. Two counts also charged that the engine struck Cramey. There was a plea of not guilty, a trial, and a verdict and a judgment for plaintiff. Defendant appeals.

The bell or gong at the crossing was not rung that day. There was very slight proof that it had been rung during the time Cramey had lived in Streator, which was more than five years. There was no proof that it had been connected with wires so as to ring when an engine was within 1200 feet or any other distance from that crossing, and no proof of any facts which made it the duty of defendant to have the gong in operation or which authorized the public to rely upon it. There is therefore no evidence which makes the failure of that gong to sound of any importance in this case.

Each count of the declaration alleged that Cramey was exercising due care. Appellant contends that the proof shows that he lost his life because of his lack of due care. We have carefully searched the evidence upon this subject, not only in the abstract but in the record also, and have reached the conclusion that the proof is overwhelming that Cramey must have known of the approach of the train long before either of them reached the crossing. Every witness on both sides (except possibly Maggie Little) who was in that neighborhood at the time of the accident knew the train was coming long before it reached that crossing. There were six witnesses who were not employes of defendant who knew the train was coming. Most of them first heard it whistle and then looked and saw it coming, but one saw it and then heard it whistle. In addition to these six witnesses, the engineer, fireman, baggageman, conductor and brakeman, each testified that a long station whistle was sounded at or just east of the Vermilion river bridge (which

is about 2500 feet west of the crossing in question), and that a crossing whistle of two long and two short blasts was sounded at or near the viaduct, and one of them testified this whistling lasted till the engine had nearly reached Bloomington street.    The men who should know testified the bell was rung continuously till the train reached the crossing. Others testified that it was not rung, and others that they did not hear it or did not remember whether it rung.    At least three and perhaps four efforts were made to warn and stop Cramey.    The witness Dean had crossed Kent street and started north on the west side of Bloomington street just as Cramey was leaving Kent street on his way north down the decline of Bloomington street towards the railway.    Dean had heard the train whistle at the river and again at the viaduct.    He called out to Cramey "Look out," or "There is a train" or some such words.    Cramey did not stop or slacken his speed and Dean did not know whether Cramey heard him.    The witness Baum was coming south from north of the track.    He heard the train whistle and saw it coming under the viaduct.    He hurried south across the track.    Then he saw Cramey coming down the middle of the street towards him, on his bicycle.    He stepped from the sidewalk into the gutter, threw up his hand and waved it and shouted to Cramey:    "You had better wait; the train is right here."    Whether the witness intended to say Cramey was then forty feet or forty yards from the track, is not certain, but he probably meant forty feet.    Baum testified that he was then only three or four steps from Cramey, that Cramey looked directly at him when he said this, and that he knew Cramey heard him, and that when Cramey looked at Baum the coming engine was directly in range behind Baum as he stood facing Cramey, so that Cramey must also have seen the engine.    Baum testified that Cramey made some reply which he did not understand, and then dropped his head and started on at a greater speed.    Baum testified that another man some distance away put up both hands and exclaimed, "Oh, my God."    Maggie Little was riding east on Kent street, in a milk wagon, with her back to the ap-

proaching train.  She testified the engine did not whistle nor the bell ring.  As she was going from the train and not approaching the crossing she had no special occasion to notice the train signals.  She however testified that the train was coming, but did not state how or when she learned that fact.  She knew Cramey, as he bought milk at the dairy of her family.  She saw him going north on Bloomington street near the railroad, and she saw a man on the north side of the track motioning.  This man waved his two hands and shouted loud enough so that she heard him on Kent street, though she did not hear or remember what he said.  If this was the same man about whom Baum testified, then Cramey was warned by three different persons; if it was another person, then Cramey had four warnings.  Three witnesses (one of them called by plaintiff) testified to facts tending to show that after receiving at least the second of these warnings Cramey increased his speed in an apparent effort to cross the track ahead of the train.  While two or three of plaintiff's witnesses who were not very near judged that Cramey's bicycle reached the nearest rail of the track and was struck by the cow catcher, we think the evidence establishes that the cow catcher did not strike the bicycle or Cramey, but that the bicycle struck the engine between the pilot beam and the cylinder head.

Cramey was about 25 years old.  He spoke English well. He was possessed of the usual faculties.  We think it the only reasonable conclusion that what so many others in the vicinity saw and heard and knew he also knew; that at least the warning given by Baum was heard by him, and that he was careless and reckless, and in consequence ran into the side of the engine and was thereby killed.  We think what was said by this court in C., B. & Q. Ry. v. Thorson, 68 Ill. App., 288, on pages 292 to 294, is applicable, and that plaintiff cannot recover.

It is therefore unnecessary to determine whether recovery could be had for the benefit of alien next of kin, resident in Syria.

The judgment is reversed.

*Reversed.*

Finding of facts, to be incorporated in the judgment of the court:

We find from the evidence that George Cramey, plaintiff's intestate, was not exercising due care for his own safety at and just before the time he received the injury from which he died, and that his death was the result of his lack of due care.