SECOND DISTRICT—OCTOBER, 1909.      407

Metropolitan T. & S. Bk. v. C., B. & Q. R. R. Co., 150 Ill. App. 407.

## Metropolitan Trust & Savings Bank, Administrator, Appellee, v. Chicago, Burlington & Quincy Railroad Company, Appellant.

### Gen. No. 5,070.

CONTRIBUTORY NEGLIGENCE—*when person in vehicle injured by railroad train guilty of.* One who carelessly and recklessly drives his horse against the side of a railroad train regardless of the danger of colliding with a moving train already occupying the street upon which he was driving, is guilty of contributory negligence which will bar a recovery, notwithstanding there may have been negligence on the part of the railroad company.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Du Page county; the Hon. DUANE J. CARNES, Judge, presiding. Heard in this court at the April term, 1909. Reversed with finding of fact. Opinion filed October 19, 1909.

HOPKINS, PEFFERS & HOPKINS, for appellant; CHESTER M. DAWES, of counsel.

COBURN & CASE and S. L. RATHJE, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

The Metropolitan Trust and Savings Bank, administrator of the estate of Edwin H. Johnston, deceased, began this action against the Chicago, Burlington & Quincy R. R. Co. to recover damages for the death of Edwin H. Johnston, for the benefit of the widow and next of kin, and alleges that the deceased was killed because of the negligence of the defendant. The negligence averred in one count of the declaration is that there was an ordinance in the village of Hinsdale requiring the railroad company to keep a flagman at the crossing of Lincoln street, the provisions of which the railroad company failed to observe; another count avers that there were gates at said crossing provided by the railroad company which it was the custom and practice of the defendant to lower before trains went

over said crossing and that defendant negligently omitted to lower said gates at the time the deceased was killed. Each count avers that the deceased was in the exercise of due care. At the close of plaintiff's evidence and of all the evidence the defendant requested a peremptory instruction which was refused. The jury returned a verdict in favor of plaintiff for $3,000 on which judgment was rendered and the defendant appeals.

The evidence shows that the deceased, who resided in Hinsdale at the time of his death, was a telegraph operator employed in the general offices of Armour & Co. in Chicago. On July 19, 1905, he left Chicago on a train and arrived in Hinsdale about seven o'clock p. m. On his arrival there he met two brothers named Papenhousen and Gustave Strume. It was suggested by one of them that they take a ride to the village of Fullersberg, a mile or two north of Hinsdale. Johnston went to a livery stable on the north side of the Burlington tracks, secured a horse and surrey, then drove south across the tracks into an alley behind a house owned by E. H. Fleck, where the Papenhousens and Strume were waiting for him. There they secured nine bottles of beer. All four got into the surrey and drove to Fullersberg, drinking the beer amongst them, Johnston drinking a couple of bottles. They "made a swing around Fullersberg" and drove back to Hinsdale, arriving there about ten o'clock. Before the Burlington tracks were reached the Papenhousens and Strume got out of the surrey, leaving Johnston to return the rig to the livery stable which was some two or three hundred feet north of the track, and to get to which it was unnecessary to cross the tracks. Johnston, in place of going to the livery stable, drove across the tracks, and then from the east into the alley behind Fleck's house. Fleck's house fronts on Exchange street; Exchange street runs adjacent to and parallel with the Burlington tracks. The alley which is on the rear of Fleck's place runs west to Lincoln street and Lincoln street runs north and south across the Burlington tracks.

Metropolitan T. & S. Bk. v. C., B. & Q. R. R. Co., 150 Ill. App. 407.

There are gates at the Lincoln street crossing and the gate tender's tower is near the street crossing next south of Lincoln street. There is a building adjoining the alley in the rear of Fleck's place from which the beer was secured, and it is about seventy-five feet from this building to Lincoln street. The property in the block in which Fleck's house is situated is vacant from his place to Lincoln street. The night was moonlight but the sky was more or less overcast with clouds. As Johnston drove up the alley towards Fleck's he was driving on a run, whipping the horse. Fleck was in the lot west of the building from which the beer was obtained. A freight train was coming along the railroad from the north. As Johnston drove by, Fleck called to him using vulgar language, that a train was coming. Johnston called to him, "Go to ——," and drove on down the alley turning north on Lincoln street towards the railroad; at the turn the rig struck a tree which threw the horse on its knees but the horse recovered and went on towards the railroad on a trot, and collided with the side of the passing train about 160 feet from where the rig collided with the tree. When Fleck saw Johnston's reckless driving he started across the vacant lot to head him off. A Mrs. Fraser, who was on Lincoln street, testified to seeing Johnston coming down the alley, the rig collide with the tree and drive on towards the railroad. When Johnston turned the corner the train was crossing Lincoln street and the gates were down. Mrs. Fraser testifies to the gates having been down and being raised up; to seeing the green light on the gate rise as the gate rose, and that she saw a brakeman's lantern on the train passing, all about the time Johnston's rig ran into the side of the train. The horse and Johnston were thrown towards the west, Johnston being found by the side of the west sidewalk and dying shortly thereafter; the surrey was by the side of the gate post.

There is no conflict in the testimony that the train could be heard and seen. Fleck and Mrs. Fraser, the only witnesses to the accident, both testify that they

410 APPELLATE COURTS OF ILLINOIS.

Metropolitan T. & S. Bk. v. C., B. & Q. R. R. Co., 150 Ill. App. 407.

could see the rig seventy-five feet distant, and that the train could be seen and heard, and that Johnston undertook to drive over it while it was crossing the street. Mrs. Fraser and Fleck testify that the gates were down until the train was passing across the street and that the gates were raised with a green light on them just about the time Johnston reached them. The deceased from the evidence appears to have carelessly and recklessly driven his horse on a run against the side of the train, regardless of the danger of colliding with a moving train that was already occupying the street.

"There is not much room for a difference of judicial opinion where the traveler, with the courage of the Wandering Jew displayed when he parted his coat tails and received a shower of grape shot at close range at the battle of Wagram, or that Dagobert displayed when he rode upon a row of broken bottles—quietly walks, runs or drives against a moving train, contributory negligence being conclusively imputed to him." Thompson on Negligence, Vol 2, Sec. 1672, and Note 460, as follows: "It is an amazing commentary upon human nature that the books present such cases, but here they are." Chicago Board of Underwriters v. C. & E. I. Ry. Co., 44 Ill. App. 253; C. & A. Ry. Co. v. Blake, Admr., 125 Ill. App. 336; Lomby v. N. Y., etc., R. R. Co., 25 App. Div. (N. Y.) 309; Banning v. Chicago, etc., R. R. Co., 89 Iowa 74; Engrer v. O. & M. R. R., 142 Ind. 618; Hauser v. Central R. R. Co., 147 Pa. St. 440.

The act of the deceased in driving against the train was glaring and culpable negligence. While the railroad company was negligent in not having a flagman at the crossing as required by the ordinance, the evidence conclusively proves not only that Johnston was not in the exercise of due care but that he was guilty of negligence. It was error to refuse the peremptory instruction. The judgment is therefore reversed with a finding of fact.                                                    *Reversed.*

FINDING OF FACT: The deceased was killed because of his own recklessness and want of ordinary care.