Stephen Johandes, Plaintiff in Error, v. Chicago, Milwaukee & St. Paul Railroad Company et al., Defendants in Error.*

Gen. No. 33,522.

Heard in the first division of this court for the first district at the December term, 1929. Opinion filed February 24, 1930.

CHARLES C. SPENCER, for plaintiff in error.

M. L. BLUHM, C. L. TAYLOR and MARVIN A. JERSILD, for defendants in error; SIDNEY C. MURRAY, of counsel.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Plaintiff, while driving his automobile on the night of March 2, 1924, eastward on 111th Street in Cook county, ran into the side of a freight train of defendants, receiving serious injuries. He brought suit and at the close of plaintiff's evidence the court directed the jury to return a verdict finding the defendants not guilty and judgment was entered on the verdict. Plaintiff seeks a reversal.

---

* This case which was formerly published as an abstract (256 Ill. App. 597) is now directed by the court to be published in full.

There are two railroad tracks running southerly crossing 111th Street, which runs east. On either side of the railroad crossing is a pole with the usual railroad crossing sign attached and on each of these poles is a kerosene lantern. Plaintiff, about midnight, was driving east on 111th Street approaching the tracks. There was evidence that the lamp on the west or near side of the tracks was not burning at this time. There were no gates nor watchman nor any device to guard the crossing except the aforesaid poles and lanterns. The crossing is in the open country and is at grade. The surrounding lands are swampy and flat. There are no hills or trees or buildings to obscure the vision of any one approaching the railroad crossing.

The absence of the signal light on the west side of the track to warn persons coming from that direction and the absence of any other safeguards might properly have been submitted to the jury as tending to prove negligent maintenance of the crossing.

The decisive question is whether or not the plaintiff was guilty of contributory negligence, as a matter of law.

All of the witnesses testifying for plaintiff say that it was a foggy night. One witness describes it as "a real dense fog." Plaintiff at the time of the accident was 27 years old, a truck driver by trade. On the night of the accident he left his home about 5:30 or 6:00 o'clock, went to a friend's house and got two others, James McDonald and Miss Thibeau; they then went to the house of Miss Thibeau's brother, going west on 111th Street over the same railroad tracks where the accident subsequently happened. Plaintiff was familiar with the locality and knew the location of the railroad crossing. They left the home of Miss Thibeau's brother to return about 11 o'clock. The automobile was a one-seated Dodge car. Plaintiff sat on the left side driving the car; McDonald was to his right and

Miss Thibeau sat on McDonald's lap, facing forward. They drove south on Ridgeland Avenue and then turned eastward on 111th Street. The railroad tracks in question are a little over a mile and a quarter east of Ridgeland Avenue; 111th Street is a concrete paved road. When they struck 111th Street plaintiff turned on the dimmers of his two headlights. He also had a spot light which he used to see the edge of the road.

Miss Thibeau testified that as they approached the railroad crossing they were driving 15 or 20 miles an hour. Plaintiff testified it was 18 or 20 miles an hour. Both of them stated that they were looking for the railroad crossing. While they were thus moving along they ran into the side of a south-bound moving freight train of approximately 80 empty gondola cars, at about the 40th car from the engine. McDonald was killed and plaintiff received the injuries on which this suit is based. Plaintiff testified that, "With my spot light ahead of me as I approached the crossing, I could see about 25 feet. The dimmers didn't amount to much. It was a Dodge machine and little dim lights; it is an awful low candle power. If I had bright lights on I could have seen 150 feet." He again said, "I could see these cars 25 feet before I got to it. I could stop within 18 feet. . . . The reason I didn't have my headlights on, . . . I didn't like to blind anyone. I knew we were approaching a dangerous place."

We then have a situation of the plaintiff knowing that they were approaching a dangerous railroad crossing on a very foggy night but he keeps the dimmers on his headlights, although there is evidence (and that doubtful) of only one automobile approaching from the opposite direction which might require plaintiff to lower his lights, and this automobile was passed over a mile from the crossing, but the lights were "dimmed all the while"; that with his headlights on he could have seen 150 feet ahead of him; that even with the small spot light he could see 25 feet ahead of him, and

that he could stop his automobile within 18 feet. This leads to the inevitable conclusion that he was heedless in failing to keep a proper lookout and in turning down his headlights and in the rate of speed at which he was approaching what he knew was a dangerous railroad crossing; and that such conduct prevented him from either seeing or hearing the passing freight train in time to have prevented the accident by stopping. Such conduct was negligence directly contributing to the accident and plaintiff could not recover damages.

We are well aware that usually questions of contributory negligence are questions of fact to be submitted to a jury, but this is not true of every case. In *Metropolitan Trust & Savings Bank v. Chicago, B. & Q. R. Co.*, 150 Ill. App. 407, where the driver was killed by running into the side of a train, it was held that the act of the deceased was "glaring and culpable negligence," and that it was error to refuse a peremptory instruction finding the defendant not guilty, although the railroad company was guilty in not having a flagman at the crossing. A number of supporting cases are cited. In *Fuller v. Peoria & Pekin Union Ry. Co.*, 164 Ill. App. 385, under somewhat similar circumstances it was said that the driver was guilty of contributory negligence in driving into the train. Another like case is *Fannin v. Minneapolis, St. P. & S. S. M. Ry. Co.*, 185 Wis. 30, where the plaintiff drove his automobile into the side of a standing freight train and it was charged that defendant was guilty in not properly protecting the crossing. The court said, even if defendant was negligent, "the plaintiff was himself negligent in so driving in the nighttime along a familiar highway, knowing of the existence and location of the railroad crossing, . . . and chargeable with knowledge of the possible presence of a train either standing on or moving over the crossing." And if, as claimed, a wall of smoke prevented plaintiff from seeing the train, "ordinary care required him to stop or substantially

lessen his rate of speed before plunging on and into such obstruction." In *Phillips v. Davis,* 3 Fed. (2d) 798 (C. C. A.), the opinion quotes from *Serfas v. L. & N. E. R. Co.,* 270 Pa. 306, where it was held that it was the duty of one "traveling by night to have such a headlight as will enable him to see in advance the face of the highway and to discover grade crossings, or other obstacles in his path, in time for his own safety, and to keep such control of his car as will enable him to stop and avoid obstructions that fall within his vision. . . . We have never held darkness an excuse for failure to perform this absolute duty." The opinion in the *Phillips* case also held that, if the plaintiffs had on their low lights as they approached a known railroad track, "the circumstance of darkness and proximity to a point of danger should have suggested the ordinary care of turning on the full lights for a moment. This duty, in the situation, was paramount to that of observing the dimmer ordinance. The two duties were not in conflict. Increasing the light was but a natural precaution, yet it was one which involved the proper use of lights and, accordingly, the degree of care which the law required in the circumstances." In *Yano v. Stott Briquet Co.,* 184 Wis. 492, where the plaintiff drove his automobile into a standing freight car, it was held: "If the plaintiff was driving at the speed he said he was driving, had his lights been on, he must have seen the obstruction in time to avoid it."

These expressions and others of a similar nature are applicable to the instant case. If the plaintiff had his bright lights on, as the circumstances demanded and the law required (*Johnson v. Gustafson,* 233 Ill. App. 216), he would have seen the passing train in ample time to stop and avoid the accident.

We have read the opinion in *Missouri, K. & T. R. Co. v. Long* (Tex. Civ. App.), 293 S. W. 184, cited by plaintiff, and the only similarity between it and the case before us is that there an automobile was driven

into a passing freight train. There the railroad crossing was in a depression about 10½ feet below the level of the highway approaching from one side and over 23 feet below the level of the highway on the other side. There were confusing turns as one approached the crossing, also various electric lights which directly faced an automobile driver before approaching the crossing, so that one looking ahead would look above and over any freight train that might be passing. There were other circumstances which make this case quite different from the one under consideration.

We have taken into consideration the testimony of plaintiff supported by the physician that his injury was such as to cause him to lose all recollection of what happened from a point about three-quarters of a mile west of the railroad crossing, but we are giving full weight not only to his testimony most favorable to his claim but also to the testimony of Miss Thibeau.

We are of the opinion that the peremptory instruction was proper and the judgment is affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.