Orris TURNER, Respondent,

v.

**ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.**

No. 46555.

Supreme Court of Missouri,

Division No. 1.

Jan. 12, 1959.

William R. Gentry, Herbert E. Bryant, Arnot L. Sheppard, St. Louis, for appellant, Joseph H. Wright, Herbert J. Deany, Chicago, Ill., of counsel.

John P. Sullivan, St. Louis, for respondent.

VAN OSDOL, Commissioner.

Defendant, Illinois Central Railroad Company, has appealed from a judgment of

$8,000 for personal injuries and property damages sustained by plaintiff when he drove his automobile at nighttime into the side of defendant's moving freight train at the Grand Tower grade crossing on State Highway No. 3 in Illinois. Plaintiff's case was submitted to the jury on negligence of defendant in failing to provide some reasonable method of warning the public of the presence of trains on the crossing.

We initially have examined the decisive contention of error of the trial court in refusing to direct a verdict for defendant.

Passing the Grand Tower grade crossing defendant's single-track line lies in a general north-south direction and Highway No. 3 lies in a general northeast-southwest direction. In approaching from the southwest, Highway No. 3 goes into a "S" curve at a point 1,500–2,000 feet from the crossing. The highway straightens out again one hundred feet to one hundred thirty feet from the crossing, and then proceeds in a general northeast direction to the crossing. Cross-buck signs of the reflector type at the crossing warn the highway traveler in his approach. There is (at the time of the casualty) no signal device, watchman or overhead illumination at the crossing. The terrain is practically level, and there are no buildings in the immediate vicinity. There are some trees, brush and "stuff" between the right-of-way lines of the highway and railroad on the traveler's right as he approaches the crossing from the southwest. But apparently there are no trees or other obstructions of any kind between the crossing and a post on the berm of the roadway four hundred fifty feet southwest of the crossing. The post bears a sign indicating a railroad crossing. To the left between the rights of way of the railroad and highway are four or five rather large trees with sparse foliage in November.

At six or a little after in a November evening plaintiff was driving his Oldsmobile northeastwardly in returning to his home at Grand Tower, Illinois, from his work at Joppa. The weather was fair and cool. The windows of the Oldsmobile were up and the radio was turned "on low," and plaintiff was listening to it. The automobile was moving at a speed of about fifty miles per hour. Plaintiff was familiar with the heavy traffic conditions on the highway; but, at the time, there was but one vehicle on the highway in that area. Plaintiff had passed this car before he went into the "S" curve, and the vehicle was following plaintiff's Oldsmobile at a distance of "maybe three or four" car lengths. The driver of the other car testified it is "uncommon for me to see one (a train moving over defendant's line) that late at night." Plaintiff was also familiar with the crossing. He had passed over it in the daytime, and at night; he knew "right where it was." In going to and from work he had driven over the crossing many times—fifteen hundred times in the preceding three years.

When plaintiff was around a hundred feet from the crossing, moving at about fifty miles per hour, he first saw the train; he applied his brakes and tried to turn to the left. He reduced speed—to what speed "I don't have any idea—I could have stopped if I had a little further to go." The right front of the Oldsmobile hit the sixteenth car in the train and the automobile "kind of pivoted around and the back end came into it." Plaintiff did not know in what distance he could have stopped his car; he "didn't know whether it would take 50 or 100 or 1000 feet."

As indicated, plaintiff's automobile came into contact with cars of defendant's train when the engine and fifteen of the twenty-three coal and boxcars of the train, moving at approximately ten miles per hour, had passed northwardly over the crossing. The automobile which had been following plaintiff's car also came into contact with the train.

Plaintiff introduced evidence tending to show that darkness and the trees on the

left partially obscured or screened from the view of the highway traveler driving northeastwardly that part of the train which had passed over the crossing from the illumination of the automobile headlights which shone in that direction; and that the color of the unlighted cars of the part of the train which had passed over the crossing blended into the dark, screened aspect of the area to the left, so that the highway traveler could not see the part of the train which had passed over the crossing. And, in passing over the last right-hand segment of the "S" curve the headlights of the automobile, shining to the left, did not clearly illuminate the crossing. It was not until an automobile moved to the straight one hundred feet (defendant's evidence was one hundred thirty feet) segment of the highway that the headlights illuminated and the driver of the vehicle could plainly see the crossing.

Defendant-appellant contends that the evidence wholly failed to show any negligence, proximate or remote, on the part of defendant; and that the evidence incontrovertibly shows that plaintiff was guilty of gross negligence which was, at least, contributory to his injuries.

It is asserted by plaintiff (respondent) that, although ordinarily a train on a crossing is a warning to the traveling public of its presence, it is not a warning when it cannot be seen; and the railroad has the duty to take extra precautions to protect travelers at unusually dangerous crossings (Homan v. Missouri Pac. R. Co., 334 Mo. 61, 64 S.W.2d 617); that the evidence was substantial in tending to show the crossing involved herein was more than ordinarily hazardous; that defendant had the duty to take the extra precautions of installing and maintaining warnings reasonably commensurate with the particularly hazardous condition; that plaintiff sustained his burden under Illinois law (O'Leary v. Illinois Terminal R. Co., Mo.Sup., 299 S.W.2d 873; Gerhard v. Terminal R. Ass'n of St. Louis, Mo.Sup., 299 S.W.2d 866) of intro-

ducing evidence substantial in tending to show the absence of his contributory negligence, that is, evidence which, with any legitimate inference that may be legally and justifiably drawn therefrom, tends to show the use of due care (Greenwald v. Baltimore & O. R. Co., 332 Ill. 627, 164 N.E. 142; Gerhard v. Terminal R. Ass'n of St. Louis, supra); and that plaintiff's case was properly submitted to the jury.

As we have said the highway approaches the crossing from the southwest traversing a curve which does not straighten out until the highway has reached a point about one hundred feet from the crossing. It may be that it could be inferred a highway traveler, unaware of the location of the crossing, in approaching the crossing at nighttime from the southwest, in the confusion of heavy traffic and in the obstructed or "screened" surroundings, might not see the crossing or a train approaching, standing on or moving over it until too late to avoid a collision, although the traveler was exercising the appropriate degree of care for his own safety. We are not called upon, however, to particularly analyze the evidence introduced to determine whether there was submissible negligence of defendant in failing to take some further and reasonable precaution to warn the traveling public. We shall assume, without deciding, that the issue of defendant's negligence was submissible to the jury. We make this assumption because, having examined the evidence set forth supra, it seems clear to us there was no substantial evidence tending to show that plaintiff was not negligent in approaching the crossing and in driving into the train; and, moreover, we believe plaintiff's own testimony, as a matter of law, affirmatively shows he was contributorily negligent.

Plaintiff was familiar with the crossing; knew of its exact location; and was chargeable with the knowledge of the possibility of danger of a train approaching or moving over the track at the crossing. Of course, if he was attentive, plaintiff saw that darkness enveloped the crossing's approach. He

also must have seen that the headlight beams were to the left and were not focused in the direction of the crossing, the location of which plaintiff knew, until his vehicle came to the straightaway where the headlights shone on the crossing and train about one hundred feet away. Without knowing the distance within which he could stop his vehicle, plaintiff drove through the obvious darkness and obscurity of the approach, thence into the straightaway and first saw the train moving across the crossing when he had approached to a point one hundred feet of it and beyond which point he could not or did not stop. Plaintiff's own testimony would reasonably support the inference that he was not attentive. But, assuming he was looking and listening, the rate of speed at which his vehicle was moving surely prevented plaintiff from seeing or hearing the moving freight train in time to have prevented the casualty by stopping his car. Realistically, it was quite as if plaintiff had not looked or listened at all. Surely, it could not be reasonably said that plaintiff, knowing the location of the dangerous crossing, did not have the duty in the circumstances to have his vehicle under such control as to stop short of a train, which might be on the crossing, when he reached a point from where he could see or hear it. We think the conclusion is inescapable that plaintiff was contributorily negligent. Johandes v. Chicago, M. & St. P. R. Co., 260 Ill.App. 328; Harper v. Thompson, 318 Ill.App. 226, 47 N.E.2d 501.

See also Fannin v. Minneapolis, St. P. & S. S. M. R. Co., 185 Wis. 30, 200 N.W. 651, cited in the Johandes case, where plaintiff Fannin drove his automobile into the side of a standing freight train and it was alleged that defendant was negligent in failing to protect the crossing. The reviewing court said, even if defendant was negligent, plaintiff himself was negligent in driving in the nighttime (at a rate of speed at which he could bring his car to a stop in about two rods) along a familiar highway, knowing of the existence and location of the railroad crossing and chargeable with the knowledge of the possible presence of a train either standing on or moving over the crossing, and into a cloud of smoke at a point about one rod from the train. "And if, as claimed, a wall of smoke prevented plaintiff from seeing the train, 'ordinary care required him to stop or substantially lessen his rate of speed before plunging on and into such obstruction.'"

■ Plaintiff has relied on the rule of Illinois law well stated in Humbert v. Lowden, 385 Ill. 437, 53 N.E.2d 418, and restated in O'Leary v. Illinois Terminal R. Co., supra, that it cannot be said a person is in fault in failing to look and listen, if misled without his fault, or where the surroundings may excuse such failure. And plaintiff herein has cited cases in which contributory negligence was held to be a jury question. It is urged that the evidence tending to show that neither the bell nor the whistle of the train was being sounded, that no other notice or warning was given that the train was blocking or moving over the crossing until plaintiff actually saw it, and that plaintiff theretofore had no reason to expect a train on the tracks seldom used at nighttime were circumstances which excused plaintiff from observing the train. But plaintiff was entitled to rely on the fact, if so, that no bell or whistle was being sounded if otherwise he was taking appropriate precautions for his own safety. Darkness, alone, has never been held an excuse for the failure to look and listen. Johandes v. Chicago, M. & St. P. R. Co., supra. And a person approaching a railway crossing is bound to apprehend that a train might be passing over it—"'It is always train time at any railroad crossing.'" Scruggs v. Baltimore & O. R. Co., 287 Ill.App. 310, 4 N.E.2d 878, 880.

Examining the cases cited by plaintiff we note that in Finley v. Illinois Cent. R. Co., Mo.App., 251 S.W.2d 713, the reviewing court, in applying the rule

of the Humbert case, pointed out that reasonable minds might well differ whether stated lights, in the shown circumstances of that case, misled plaintiff and furnished a sufficient justification for his failure to look immediately in the opposite direction. In Elliott v. Missouri Pac. R. Co., 227 Mo.App. 225, 52 S.W.2d 448, a demurrer had been sustained to a petition alleging plaintiff was ·in the exercise of due and proper care and by reason of the dark, foggy, misty atmospheric conditions plaintiff in the exercise of due and proper care could not and did not discover the train of cars until the automobile was too close to avoid the collision. The pleading was reasonably susceptible of the intendment that in the abnormal atmospheric conditions the roadway appeared to be open, although in fact obstructed. In Busker v. New York Cent. R. Co., Mo.App., 149 S.W.2d 449, the plaintiff's decedent was struck and killed by a passenger train moving southwesterly on one of two mainline tracks, and it reasonably could be found that deceased's attention was focused on the train moving southeastwardly on the other track as the immediate peril to be avoided. In Poehler v. Lonsdale and Kurn, 235 Mo.App. 202, 129 S.W.2d 59, plaintiff was "looking ahead," driving in a dense fog. He did not know he was approaching a crossing. And there was nothing to indicate the presence of a crossing. In such circumstances it was said it was not to be held that, as a matter of law, plaintiff was obliged to see a black coal car before colliding with it.

We hold the judgment for plaintiff should be reversed, and it is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.